**SATELLITE ELECTRIC COMPANY, Appellant,**

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

No. 96–1135.

United States Court of Appeals, Federal Circuit.

Jan. 30, 1997.

---

4. We note that Ms. Bryant does not challenge the NSF's decision to revoke her grace-period privi-lege.

Victor G. Klingelhofer, Cohen & White, Washington, D.C., argued for appellant.

Shalom Brilliant, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued for appellee. With him on the briefs were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director.

Before ARCHER, Chief Judge, RICH, Circuit Judge, and FRIEDMAN, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The *Eichleay* formula is used to determine a government contractor's damages reflecting unabsorbed home office overhead when the government delays work on the contract indefinitely but requires the contractor to remain available to resume work immediately on the government's instruction. The Armed Services Board of Contract Appeals denied the contractor's claim for *Eichleay* damages

because the government had shown that the delay did not prevent the contractor from taking on additional work or reallocating its resources. We *affirm.*

## I.

The Navy awarded the appellant Satellite Electric Company ("Satellite") a contract to install a power supply system. Twice during the performance of the contract the Navy required Satellite to stop performance because of the Navy's inability to provide two items that the contract required it to supply: batteries and an induction coil. The first period of suspension of work lasted 82 days, and the second period lasted 146 days. *See Appeal of Satellite Elec. Co.,* A.S.B.C.A. No. 46935, 95–2 B.C.A. (CCH) ¶ 27,883 at 139,-084–085, 1995 WL 518722 (Aug. 29, 1995). Satellite was required to remain on "standby" during suspension of work, *i.e.,* to be available to resume work promptly upon the government's instruction. *See Appeal of Satellite Elec.,* 95–2 B.C.A. at 139,089. Both suspensions of work occurred after Satellite had completed 96.7 percent of the contract.

Throughout the periods of suspension, Satellite bid on new contracts. Satellite bid on approximately 30 projects during the first period, and on 19 during the second period. Satellite obtained only two contracts. Satellite's inability to obtain new contracts resulted partially from limitations in its bidding bond, unrelated to the contract, that restricted the number and type of contracts upon which it could bid, and partially from economic conditions that made it difficult to bid competitively for new contracts. *See id.*

As we describe in part II below, *Eichleay* damages are calculated by multiplying the daily amount of the contractor's unabsorbed home office overhead allocated to the particular contract by the number of days for which work was suspended. After two evidentiary hearings, the Armed Services Board of Contract Appeals (Board) denied the contractor's claim for *Eichleay* damages. *See id.* The Board held that Satellite had established the first two elements of the *Eichleay* formula: (1) "a government-imposed delay" and (2) the contractor being on "standby" status during that delay. "There is no question that appel-

lant was on standby for a period of 228 days for delays attributable to the Government." *Id.* The Board further held, however, that the government had carried its burden of rebutting that *prima facie* case by showing that "the contractor did not suffer or should not have suffered any loss because it was able to either reduce its overhead or take on other work during the delay." *Id.* The Board ruled that the evidence on which Satellite relied "does not show an inability to take on additional work for any reason attributable to the Government" and that "[t]here must be an impairment of a contractor's ability to take on other work that is attributable to the Government-caused delay to be reimbursed for the period of delay under the *Eichleay* formula." *Id.*

## II.

A. In *Eichleay Corp.,* A.S.B.C.A. No. 5183, 60–2 B.C.A. (CCH) ¶ 2688, 1960 WL 538 (July 29, 1960), *aff'd on recons.,* 61–1 B.C.A. ¶ 2894, 1960 WL 684 (Dec. 27, 1960), the Board approved, as "a realistic method of allocation of continuing home office expenses" "incurred during a period of suspension of work" when it was not practical for the contractor to undertake the performance of other work which might absorb them, the following computation, which has become known as the *Eichleay* formula. It involves:

> an allocation of the total recorded main office expense to the contract in the ratio of contract billings to total billings for the period of performance. The resulting determination of a contract allocation is divided into a daily rate, which is multiplied by the number of days of delay to arrive at the amount of the claim.

*Eichleay,* 60–2 B.C.A. at 13,574.

This court implicitly approved the *Eichleay* formula, apparently for the first time, in *Capital Electric Co. v. United States,* 729 F.2d 743 (Fed.Cir.1984), in which the General Services Board of Contract Appeals had rejected the formula. Since then this court has considered the *Eichleay* formula in a number of cases in which it has explained and developed the conditions for applying the formula. *See, e.g., Interstate Gen. Gov't Contractors v.*

*West,* 12 F.3d 1053 (Fed.Cir.1993); *Wickham Contracting Co. v. Fischer,* 12 F.3d 1574 (Fed.Cir.1994).

The three elements necessary to recover *Eichleay* damages are: (1) a government-imposed delay occurred; (2) the government required the contractor to "stand by" during the delay; and (3) while "standing by," the contractor was unable to take on additional work. *Interstate,* 12 F.3d at 1056. In 1995, in *Mech–Con Corp. v. West,* 61 F.3d 883, 886 (Fed.Cir.1995), this court reaffirmed these elements but shifted the burden of production on the third element to the government:

> [W]hen a contractor can show that the government required a contractor to remain on "standby" and the government imposed delay was "uncertain," the contractor has established a *prima facie* case of entitlement to *Eichleay* formula damages. The burden then shifts to the government to present rebuttal evidence or argument showing that the contractor did not suffer or should not have suffered any loss because it was able to either reduce its overhead or take on other work during the delay.

*Mech–Con,* 61 F.3d at 886. Despite the shift in the burden of production, the contractor must nevertheless "establish ... (3) that it was unable to take on other work." *Altmayer v. Johnson,* 79 F.3d 1129, 1133 (Fed.Cir. 1996).

The court also has explained the rationale for the *Eichleay* formula. "Home office overhead costs are those [costs] that are expended for the benefit of the whole business, which by their nature cannot be attributed or charged to any particular contract." *Altmayer v. Johnson,* 79 F.3d 1129, 1132 (Fed.Cir.1996). They are fixed costs that are allocated on a pro-rata basis among various contracts. When the government delays or disrupts contract performance, the contractor's stream of income decreases while the fixed costs allocated to that contract continue. The *Eichleay* formula "seeks to equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay." *Wickham,* 12 F.3d at 1578. We have "recognized the impracticality of a contractor obtaining replacement work or reducing home office overhead when it must 'standby' during an 'uncertain' period of government-imposed delay." *Mech–Con,* 61 F.3d at 886 (citations omitted).

The *Eichleay* formula compensates contractors who are unable to take on replacement work because the standby status prevents the contractor from doing so. *See, e.g., Interstate,* 12 F.3d at 1057–58 ("When the period of delay or suspension is uncertain ... and the contractor is required to remain ready to resume [work] ... the contractor is effectively prohibited from mitigating such overhead costs."); *Capital Elec. Co. v. United States,* 729 F.2d 743, 745–746 (Fed.Cir. 1984) (contractor entitled to *Eichleay* damages since it had established that it "could not have taken on any large construction jobs during the various delay periods due to the uncertainty of the delays and ... the limitation on its bonding capacity") The contractor is entitled to damages, however, only if its inability to take on additional work results from its standby status, *i.e.,* is attributable to the government. *See Nebraska Pub. Power Dist. v. Austin Power, Inc.,* 773 F.2d 960, 972 (8th Cir.1985) ("The *Eichleay* formula is simply a recognized method of calculating home office overhead costs.... In every instance, a contractor must show that the delays caused its increased overhead costs."); *Aircraft Gear Corp. v. Kaman Aerospace Corp.,* 875 F.Supp. 485, 497 (N.D.Ill.1995) (during a standby delay, "the contractor must actually be unable to take on other work so that the delay causes unavoidable damages").

B. There is no question that Satellite proved the first two elements and therefore established a *prima facie* case of entitlement to *Eichleay* damages. The Board found on substantial evidence—and the government does not challenge the findings—that the government was responsible for the two suspensions of work and that Satellite was on standby during those delays. The sole question is whether the Board correctly found that the government had rebutted that *prima facie* case by showing that Satellite "was able ... to take on other work during

the delay," and that the evidence on which Satellite relied for its contrary contention did not show "an impairment of a contractor's ability to take on other work that is attributable to the Government-caused delay." We hold that the record supports those findings, and that they support the Board's conclusion that Satellite is not entitled to *Eichleay* damages.

During the two periods of suspension, Satellite submitted bids on 49 jobs. Although Satellite's president testified that the company's standby status precluded it from taking on other work during the suspension period, he also testified that during those periods the company was "bidding projects," was "aggressively trying to bid the available work that was out there within the limitations put on us by the bonding company," and that "from the end of August [we] were going after what was available ... and we bid aggressively at that point." If, as he stated, the company was aggressively going after new work, it is reasonable to infer that it had the capacity to perform whatever work it could have obtained. Indeed, he admitted that "we probably could have [taken on other work] if we had been able to find such."

In *Altmayer v. Johnson* this court, in reversing a Board of Contract Appeals decision denying *Eichleay* damages, stated that the fact that the contractor "may have bid on other contracts 'at the very end' of the subject contract, does not establish that it was able to reduce its overhead or take on other work during the delay." *Altmayer v. Johnson*, 79 F.3d 1129, 1135 (Fed.Cir.1996). In the present case, as shown above, however, the evidence that Satellite was able to take on other work was far more than its bidding "on other contracts ... 'at the very end'" of the contract involved.

There was also other evidence supporting the Board's findings. At the time of the first work suspension, the project was 96.7 percent completed. The remaining work constituted less than $30,000 of the total contract price of $845,789. The relatively small amount of work remaining to be done further supports the Board's conclusion that Satellite could have taken on significant replacement work if it had been able to obtain it. *Cf.*

*Mech–Con*, 61 F.3d at 887 n. 4 ("We are not faced with the case of a contractor who did not have to leave its resources idle in order to complete a limited amount of work. In such a case, the amount of work remaining on a suspended contract may be relevant.")

Satellite's inability to obtain other work apparently resulted in part from the limitations in its security bond. Those limitations, however, were to some extent the consequence of Satellite's delays in submitting its invoices for payment under the contract. Had the invoices been timely submitted, Satellite would have been paid sooner and presumably could have improved its bonding position. Satellite's bonding problems were considerably of its own making, and were not the result of the government's actions in suspending work. Similarly, the government was not responsible for Satellite's inability to obtain more work because of the difficult competitive situation in which Satellite found itself.

C. Satellite contends, however, that in finding that the Navy had rebutted Satellite's *prima facie* case for *Eichleay* damages, the Board applied the wrong standard. According to Satellite, the statement in *Mech–Con* that the government was required to present evidence or argument "showing that the contractor ... was able ... to take on other work during the delay" required the government to establish either that the contractor actually took on replacement work or, at least, to "prove" rather than merely "show" its ability to do so. Satellite also contends that the Board erred in not requiring the government to show that the additional work Satellite sought was intended to replace the suspended work.

We decline to impose upon the government the additional burdens that Satellite proposes.

■ 1. To require the government to prove that the contractor actually obtained additional work would be inconsistent with two elements of the *Mech–Con* standard that this requirement is intended to implement, namely, that the "showing" of the government may be made by "rebuttal evidence or argument" and that the government need

show only that the contractor was "able" to take on other work. Moreover, in this court's original formulation of the *Eichleay* requirements, under which the contractor was required to show all three elements, the third element was phrased in terms of the contractor's inability to take on additional work, not in terms of whether it had done so. *See, e.g., Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1582 (Fed.Cir. 1993) (if "the contractor demonstrates that it could not have taken on any other jobs ... the *Eichleay* formula ... may also be used"). There is no indication or reason to believe that when in *Mech–Con* the court shifted the burden of production on the third element to the government, it intended to change the substantive content of that element.

Requiring the government to prove the actual acquisition of additional work would be inconsistent with the assumption on which the *Eichleay* formula rests: that where the government delays performance and requires the contractor to stand by indefinitely, the contractor is unable to develop other work against which the unabsorbed home office overhead otherwise chargeable against the suspended contract may be charged. If the government shows that the contractor was able to handle other work—whether or not it actually did so, which may have depended upon circumstances other than the delay—it refutes the underlying fact on which *Eichleay* damages are based.

The contention that the government was required to "prove" rather than to "show" that Satellite was able to take on additional work also is contrary to the *Mech–Con* standard that the government's rebuttal evidence or argument must make the necessary "showing."

 2. Finally, we reject Satellite's argument that the government had not rebutted Satellite's *prima facie* case because it had not shown that the additional work Satellite sought was intended to replace the suspended work. The work Satellite sought during the time of suspension, if Satellite had obtained it, necessarily would have replaced the suspended work.

## CONCLUSION

The decision of the Board is *AFFIRMED.*