**MELKA MARINE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 96–536C.

United States Court of Federal Claims.

June 10, 1998.

Peter Paul Mitrano, Etna, New Hampshire, for plaintiff.

Franklin E. White, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

Melka Marine moved for summary judgment on the issue of liability, claiming unabsorbed overhead and direct costs for idle equipment and loss of productive labor incurred as a result of the Government's issu-

ance of a "Suspension of Work" order. Plaintiff asserts that defendant's failure to obtain a dredging permit resulted in increased costs for which it was not compensated. Defendant cross-moved for summary judgment contending that plaintiff was fully compensated for any direct costs through contract modifications. Furthermore, plaintiff cannot establish the elements necessary to recover unabsorbed overhead under the Eichleay formula, according to defendant.

We denied the cross-motions for summary judgment because the circumstances surrounding the contract work performed by Melka Marine during the delay were unclear. Plaintiff proceeded to perform portions of the contract while other portions of the contract were delayed. Summary judgment is not proper where a material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## BACKGROUND

Plaintiff entered into a contract with the United States Navy on October 17, 1994. The contract included dredging work on the Potomac, construction of a breakwater, repair of an existing boat ramp and various other construction work at the Indian Head Marina in Maryland. Performance on the contract was to begin within 15 days of contract award with all work to be completed in 90 days. According to the contract, no work could take place between March 1 and June 15 due to the rock fish spawning season. The breakwater and dredging portions of the contract were to be performed first. The Government was required to obtain a permit from the Corps of Engineers prior to the dredging and breakwater work.

Plaintiff mobilized its equipment November 1 through November 15, 1994. During mobilization, the Government informed plaintiff that it had not received a permit from the Corps. The Government issued a Suspension of Work order to plaintiff on November 29, halting performance of the contract for an indefinite period. The Contracting Officer sent a letter to plaintiff on December 1 stating that the dredging permit was not expected until mid-January or mid-February. The Government instructed plaintiff to demobilize any equipment set aside for use on dredging and breakwater work.

Plaintiff received a letter from the Government in February 1995 stating that performance on the breakwater and dredging portions of the contract could not begin prior to October 15, 1995 because of permit delays and the rock fish spawning season. Plaintiff accepted the October 15 work resumption date and signed Contract Modification P00001 in March 1995. This extended the contract deadline to February 29, 1996 and increased the contract price by $42,688. Three other modifications were executed, only two of which are relevant here. Contract Modification P00002 in the amount of $7,163 was issued to compensate plaintiff for a changed condition in the quaywall, as well as for delay in work due to an uncovered pipe at the boat ramp excavation. Contract Modification P00003 for $19,837 was issued to reimburse plaintiff for overhead and field costs due to the Government stop work order of December 1, 1994. All work was completed in February 1996. Plaintiff seeks compensation for unabsorbed overhead and direct costs from November 16, 1994 through March 30, 1995.

## DISCUSSION

The Eichleay formula is the appropriate test to determine whether unabsorbed overhead may be recovered in government contracts. *Satellite Electric Co. v. Dalton*, 105 F.3d 1418, 1419 (Fed.Cir.1997). It is used to determine unabsorbed overhead "when the government delays work on the contract indefinitely but requires the contractor to remain available to resume work immediately on the government's instruction." *Id.* In general, "unabsorbed overhead consists of the time sensitive indirect costs incurred despite construction inactivity on a project, such as home office overhead including accounting and payroll services, general insurance, salaries of upper-level management, heat, electricity, taxes [and] depreciation." *Interstate General Gov't Contractors, Inc. v. West*, 12 F.3d 1053, 1058 (Fed.Cir. 1993) (citing *Capital Electric Co. v. United States*, 729 F.2d 743, 746 (Fed.Cir.1984)). It is understood that overhead costs are those

incurred "for the benefit of the whole business, which by their nature cannot be attributed or charged to any particular contract." *Altmayer v. Johnson,* 79 F.3d 1129, 1132 (Fed.Cir.1996).

■ To recover unabsorbed overhead under the Eichleay formula, a contractor must establish (1) a government-imposed delay, (2) that the contractor was required to be on "standby" during the delay, and (3) while "standing by" the contractor was *unable* to take on additional work. *Satellite,* 105 F.3d at 1421 (emphasis added); *Mech–Con Corp. v. West,* 61 F.3d 883, 886 (Fed.Cir. 1995); *Altmayer,* 79 F.3d at 1133. Once it is shown that the contractor was required to standby and that the government-imposed delay was uncertain, the contractor has established a prima facie case of entitlement to unabsorbed overhead. The burden then shifts to the Government to show (not prove) that "the contractor did not suffer or should not have suffered any loss because it was able to either reduce its overhead or take on other work during the delay." *Mech–Con,* 61 F.3d at 886. The contractor must establish that it was unable to take on other work during the period of delay. *Satellite,* 105 F.3d at 1421.

The Federal Circuit reaffirmed the use of the Eichleay formula in *Satellite,* 105 F.3d at 1418. In *Satellite,* the Navy contracted with the plaintiff to install a power supply system. Twice during the contract period, the Government suspended performance because of its inability to supply two items called for in the contract. The first period of suspension lasted 82 days; the second 146 days. During this suspension, plaintiff was required to "standby," but remain ready to resume work on the contract upon the Government's instruction.

Satellite bid on 49 contracts while standing by. It obtained only two. Thereafter, the plaintiff filed a claim with the Armed Services Board of Contract Appeals requesting Eichleay damages. The Board ruled that while Satellite had made out a prima facie case, the Government had successfully rebutted it by showing that plaintiff could have reduced its overhead or taken on other work during the delay.

The court of appeals affirmed the Board's decision on appeal stating that plaintiff was not entitled to Eichleay damages because it could have taken on other work during the delay. The court noted that Satellite had bid on 49 jobs and was "aggressively" pursuing other contracts. This shows that it had the capacity to perform other work. "If the government shows that the contractor was able to handle other work—whether or not it actually did so, which may have depended upon circumstances other than the delay—it refutes the underlying fact on which Eichleay damages are based." *Satellite,* 105 F.3d at 1423.

Plaintiff seeks unabsorbed overhead from November 16, 1994 to March 30, 1995. We will examine the claim in relation to four time periods.

### A.

November 16, 1994 to November 29, 1994

■ For a contractor to claim unabsorbed overhead under the Eichleay formula it must prove government-imposed delay. *Id.* at 1420. The Government issued a Suspension of Work order on November 29, 1995. This order suspended work on all portions of the contract for an indefinite period. No government-imposed delay occurred prior to November 29; the Suspension of Work order had not been issued. Therefore, no recovery is permitted during this time.

### B.

November 29, 1994 to January 4, 1995

■ Government-imposed delay began on November 29, 1994 when defendant suspended work on the contract after plaintiff requested that the Navy review designs of the boat ramp and advise whether a previous ramp was in existence. The Government issued a revised stop work order on December 1 instructing plaintiff to begin work on repairs to the quaywall, the finger pier, and the boat ramp once all questions concerning its design were determined. All work relating to the dredging and breakwater work was to be demobilized.

Plaintiff was compensated for delay from November 29 to December 1 through Contract Modification P00003. The modification stated in part:

> You are hereby compensated for overhead and field costs due to the Government issued stop work order ... dated 29 November 1994, further revised by stop work order ... dated 1 December 1994. Boat ramp work was delayed until 15 December 1994.

The contract price was increased by $19,837 by this modification. Modification P00003 covered the stop work order costs through December 15. Plaintiff claims that this was a unilateral modification and that costs claimed for unabsorbed overhead are not covered by modification P00003. Plaintiff did not produce evidence at trial to establish that these costs were not covered by the modification, however.

Plaintiff was not on standby from December 1 through January 4 so it does not meet the requirements for unabsorbed overhead under the Eichleay formula. The December 1 letter advised plaintiff that the dredging permit would not be available until January or February. Specifically, it stated, "[a]ll equipment on site that will not be utilized on the repairs to the boat ramp, quaywall, or the finger pier can be demobilized."

Plaintiff resequenced work under the contract and performed other work that did not require a dredging permit. The contract specifications "reserve[d] the right to change the order of work at any time." If plaintiff was working on the contract, it was not delayed or on standby. Plaintiff was uncertain when it could begin the breakwater and dredging portions of the contract, but that did not affect the resequenced work. Mr. Melka admitted during trial that Melka Marine was instructed to "demobilize [its] equipment ... [and] mitigate [its] damages."

The "standby" prong of the Eichleay formula does not focus on the idleness of the contractor's work force, but on suspension of work on the contract. *Interstate*, 12 F.3d at 1057. Plaintiff claims that because its employees were not working on the contract every single day, it should be compensated for the days of idleness. If the test for standby were whether the work force assigned to the contract remained idle, the contractor would be less likely to mitigate its damages by laying employees off or reassigning them to other jobs during the standby period. *Id.* at 1057 n. 4. Plaintiff was working on the contract, so it was not on standby. Delay days prior to December 1 were covered through Contract Modification P00003. No recovery is available for unabsorbed overhead from November 29, 1994 to January 4, 1995.

### C.

#### January 4, 1995 to February 2, 1995

Plaintiff did not perform work on the Navy contract from January 4 to February 2, 1995. The Suspension of Work order delaying the breakwater and dredging portions of the contract was still in effect. The Government concedes that plaintiff was on standby during this period.

Once it is determined that a contractor was required to "standby," the question becomes whether the contractor "was able to either reduce its overhead or take on other work during the delay." *Mech–Con*, 61 F.3d at 886. The Eichleay formula seeks to "compensate[ ] contractors who are unable to take on replacement work because the standby status prevents the contractor from doing so." *Satellite*, 105 F.3d at 1421. Damages for unabsorbed overhead are available only if the contractor's inability to take on other work is attributable to the Government. *Id.*

Plaintiff contends that it could not take on additional work beyond the work it actually performed. Its president testified that during the Suspension of Work order the Government had "their hooks into me ... [and] you got to be ready to go when they call you." Plaintiff did take on other work during the standby period, however. It performed work for PEPCO, the Arlington County Playground, Steuart Petroleum and Leesylvania Park. Plaintiff "bid ... probably 15 jobs ... [and] received contracts on about half of those jobs ..." according to a consultant for Melka Marine. Mr. Melka confirmed that marine equipment could be

used whenever he found work for it.[1] Plaintiff could have obtained other work, and it did.

The key to Eichleay damages is the ability to do other work. Plaintiff incorrectly assumes that even if it could use its equipment on other jobs, if those other jobs did not reimburse it for every hour of the suspended contract then the Government is liable. This is not the Eichleay test. Whether plaintiff received the jobs it bid is irrelevant. By obtaining and bidding on other work, it is reasonable to infer that it had the capacity to perform work it obtained.

## D.

### February 2, 1995 to March 30, 1995

 Plaintiff was given a date certain when the breakwater and dredging portions of the contract could be completed on February 2. The Government informed plaintiff by letter that the breakwater and dredging work would not be performed until October 15, 1995. The letter stated in part:

a. There are no impact and delay costs associated with delaying the remaining portion of the work.

b. Performance of the dredging and breakwater extension portion of the contract must be at your *original bid price* and cannot begin prior to 15 October 1995.

c. If you agree to the above mentioned conditions, a modification will be negotiated for time and *demobilization/remobilization costs only.*

Plaintiff agreed to these terms. Plaintiff was no longer on standby at this point. It had certainty.

Furthermore, the original contract stated that the dredging and breakwater work could not commence between March 1 and June 15 due to the rock fish spawning season. Plaintiff no longer was on standby then, so it cannot recover under the Eichleay formula for this period.

1. Q: "Isn't it true that [you] used that [marine] equipment whenever you could?"

## E.

### Direct Costs

 Plaintiff maintains that it is entitled to an equitable adjustment for direct costs for idle equipment and labor during the period of government-imposed delay. To be compensated for idle equipment, the contractor must show:

that the equipment for which compensation is claimed was reasonably and necessarily set aside and awaiting use in performing the contract. Stated differently, we must be able to conclude that a contractor would prudently have held the equipment for which a claim is made in readiness to perform the Government contract rather than making some other disposition of it, in order to find that the Government should pay the charges for that equipment.

*J.D. Shotwell Company,* ASBCA No. 8961, 65–2 BCA ¶ 5243 at p. 24,687, 1965 WL 591 (November 30, 1965). Moreover, the contractor must be deprived of productive use of the equipment "by being compelled by circumstances for which the Government is responsible to keep the equipment idle. It is not enough that the equipment simply *was* idle because the contractor had no other use for it at the time." *Lionsgate Corporation,* ENG BCA Nos. 5388, 5416, 5421, 5456, 91–2 BCA ¶ 24,008, 1991 WL 87879 (May 15, 1991).

We ruled in an earlier Opinion that plaintiff is not entitled to direct costs from March 1 through June 15, 1995. The contract prohibited work during this time due to the rock fish spawning season. Thus, the only relevant periods for purposes of direct cost analysis are November 16 through March 1, 1995.

 Plaintiff was compensated for idle equipment costs through December 15, 1994. Modification P00003 reimbursed plaintiff $19,837 for overhead and field costs associated with the Government's stop work order. Plaintiff did not incur costs other than those reimbursed by Modification P00003.

A: "Absolutely. If I could use it to mitigate my damages, I did, and I never charged [the Government] for that time."

Plaintiff's dredging equipment was demobilized from the Indian Head site and used on other construction projects during the delay period. For example, plaintiff mobilized its equipment to the Steuart Petroleum job in January 1995, and then to the Leesylvania Park job through March 1995. The equipment was used on other contracts. The Government did not require that plaintiff keep its equipment idle during the delay.[2] We cannot say that plaintiff was deprived of economic benefit when it could move the equipment to other job sites. Plaintiff did not use the equipment every day, but it could have used the equipment had it found work.[3] The equipment did not have to remain idle.

Plaintiff knew that the dredging permit had not been received in November 1994. The contract required that the contractor "coordinate with the Contracting Officer" regarding the dredging permit.

Modification P00001 extended the dredging and breakwater portions of the contract to October 15, 1995. Plaintiff was informed at a February 2 meeting that work could not begin until October. So plaintiff was not required to keep its equipment idle beginning in February. Moreover, no work could be performed during the rock fish spawning season. Plaintiff was not required to keep its equipment idle. It was told to demobilize it.

■ Plaintiff claims direct costs for loss of productive labor. The Government is generally liable for increased costs of idled labor during a government-imposed suspension of work. *See Signal Contracting, Inc.,* ASBCA No. 44963, 93–2 BCA ¶ 25, 877, 1993 WL 70913 (March 3, 1993). During a work stoppage, a contractor must mitigate idle labor costs by transferring labor to other uses pending recommencement of the suspended work. *Id.* (citing *Hardeman–Monier–Hutcherson (JV),* ASBCA No. 11785, 67–1 BCA ¶ 6210 at 28,748.)

■ Plaintiff contends that the Government delayed work under the contract, so it is entitled to incurred labor costs. Plaintiff's laborers were performing work on the resequenced portions of the contract throughout December 1994. When plaintiff's employees were not working on the contract in January, they were performing other construction projects.

Plaintiff claims that it could not have released any employees because they were Melka Marine's "core crew." No evidence presented at trial showed that all idle labor claimed was necessary. Plaintiff could have layed off employees pending recommencement of the Navy project. Plaintiff kept personnel employed during days when no contract work was ongoing by requiring them to do "shop work." This work consisted of maintenance and repair of Melka Marine's equipment. While plaintiff claims this work is not significant, it derived a benefit from it.

Plaintiff's claim for direct costs for idle equipment and labor cannot be sustained. The record at trial does not establish that these are costs properly chargeable to the Government.

## CONCLUSION

We denied the parties' motions for summary judgment on the issue of Eichleay and direct damages because they are factual determinations according to the *Satellite* line of cases. In such circumstances, it was proper to hear testimony about plaintiff's willingness and ability to obtain contracts during the delay. Mr. Melka testified candidly that his effort was to "mitigate damages." This was an understandable and proper good faith effort that benefits the Government. He could have obtained other work during the suspension period, and he attempted to do so. In at least one instance, he was successful. These

---

2. "All equipment on site that will not be utilized on the repairs to the boat ramp, quaywall, or the finger pier can be demobilized. Take any other steps necessary to minimized the incurrence of costs due to the suspension of permit related work." *See* Defendant's Cross–Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment, at Exhibit 6.

3. Q: "On the day where you charged a half day for [the marine equipment], had you wanted to use it the rest of that day you would have, wouldn't you have?"

A: "If I could have used it, yes, I absolutely would have used it...."

were small jobs, not of the magnitude offered by the Government. Nevertheless, the law seems clear that ability to take on other contracts is the dispositive factor.

We ruled from the bench that plaintiff had not shown an inability to obtain other contracts during the applicable period. We did not grant defendant's Rule 52 motion at that time because plaintiff asked that the record remain open for post-trial briefs and for other considerations. We have considered these matters, but now must enter judgment for the Government for the reasons stated by the court in this Opinion and on the record at trial. The Clerk will dismiss plaintiff's complaint. No costs.