ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Alderman Building Company, Inc. ) | ASBCA No. 58082 |
| ) | |
| Under Contract No. N40085-09-D-5321 ) | |

APPEARANCE FOR THE APPELLANT: Marilyn H. David, Esq.
Biloxi, MS

APPEARANCES FOR THE GOVERNMENT: Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Genifer M. Tarkowski, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE YOUNGER ON APPELLANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
(1) UNABSORBED OVERHEAD UNDER ALTERNATIVE TO EICHLEAY
FORMULA AND (2) STANDBY LABOR COSTS AND RESPONDENT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

In this sponsored appeal regarding a contract for the renovation and interior repair of a building, the contractor, Alderman Building Company, Inc. (Alderman), has moved for partial summary judgment regarding pre-performance unabsorbed overhead under an alternative method to the *Eichleay* formula, and regarding standby labor costs. In response to the motion, the Navy has opposed and cross-moved for summary judgment, generally contending that the facts do not bring the case within a recognized exception to the *Eichleay* formula. We grant Alderman's motion in part and deny the Navy's cross-motion.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

1. By date of 27 March 2009, the Navy awarded a Task Order for supplies or services under Contract No. N40085-09-D-5321 to Alderman for renovations of the interior, repairs to building systems, and incidental related work, on a building at Camp Lejeune, North Carolina (R4, tab 1 at 1, 3 of 6). The Task Order provided that "[t]he entire work...shall be completed by 3/22/2010" (*id.* at 3 of 6).

2. The contract contained various standard clauses, including Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (JUL 2002); FAR 52.242-14, SUSPENSION OF WORK (APR 1984); and FAR 52.243-4, CHANGES (JUN 2007) (R4, tab 5.6 at 11 of 31).

3. By date of 8 April 2009, Alderman entered into a subcontract with Big John's Electric Co., Inc. (Big John's), for labor, equipment, materials, and supplies for specified portions of the interior repairs to the building (R4, tab 5.12 at 1). The subcontract provided that "time is of the essence," and that Big John's was to "begin work within seven (7) days after notification" by Alderman (*id.* at 2).

4. Contract performance was characterized by repeated government-caused delays in starting work. Alderman and Big John's were delayed because new facilities for the existing tenants in the building were not available (R4, tab 6 at 1). There were multiple delays to the project start date, as memorialized in the following exchanges:

| Date | Document | Start Date | Record Citation |
|---|---|---|---|
| 13 January 2009 | Solicitation | 10 calendar days after contract award. | R4, tab 5.6 at 1 of 31 |
| 10 March 2009 | Solicitation Amendment No. 0003 | "Work may not begin…until 01 June 2009." | R4, tab 1 at 10 |
| 27 May 2009 | Email, OICC to Alderman Project Manager | "Lets plan on starting" in mid-July 2009 "time period."* | R4, tab 5.13 |
| 19 June 2009 | Email, OICC to Alderman Project Manager | Afraid construction may be pushed back to August 2009. | R4, tab 5.14 |
| 1 July 2009 | Email, OICC to Alderman Project Manager | "Lets set the new start date at 15 October" 2009.* | R4, tab 5.15 |
| 7 July 2009 | CO Suspension Letter to Alderman | Suspension "until further notice." | R4, tab 5.16 |
| 9 July 2009 | Email, Alderman Project Manager to Subcontractors | Project start date "suspended until October" 2009.* | R4, tab 5.17 |
| 30 September 2009 | Email, Alderman Project Manager to Subcontractors | "[N]ew start date for the project is 12/15/09." | R4, tab 5.18 |
| 18 November 2009 | Email, OICC to Alderman Project Manager | "We are still on for 15 December at this point."* | R4, tab 5.20 |
| 8 December 2009 | Email, OICC to Alderman Project Manager | "[N]o earlier than the 1st of February [2010] for Starting." | R4, tab 5.21 |

| 8 December 2009 | Email, Alderman Project Manager to Subcontractors | "Project will not be starting now until February 1st [2010], at the earliest."* | R4, tab 5.22 |
|---|---|---|---|
| 2 February 2010 | Email, OICC to Alderman Project Manager | Some tenants not moving out "until sometime, probably after the 9th"; others will vacate on 8th. | R4, tab 5.28 |

* Underscoring in original.

5. In his 7 July 2009 letter to Alderman, the contracting officer had advised that, pursuant to the Suspension of Work clause (*see* statement 2), "you are hereby directed to suspend all work under the referenced contract," with an exception not relevant here, "until further notice." The contracting officer's cited reason was "Government delays in vacating the premises." (R4, tab 5.16 at 2)

6. Alderman eventually began contract performance on 19 February 2010 (Expert Report of Roger K. Seals (Seals rpt.) at 2). Big John's ultimately began performance of its subcontract on the same date (R4, tab 5.38 at 2, tab 5.50 at 2) and completed work on 28 October 2010 (Seals rpt., tab 40, 1st Affidavit of Michael Dougherty (Dougherty aff.) ¶¶ 4, 5).

7. By letter to the contracting officer dated 18 August 2011, Alderman submitted a claim for $20,518 on behalf of Big John's for government delay in starting work (R4, tab 5).

8. By date of 19 January 2012, the contracting officer denied the claim in its entirety (R4, tab 6). Alderman thereafter brought this timely appeal.

9. Alderman's lengthy complaint is in 15 counts. Styling the counts as Alderman does, we summarize those alleging entitlement to *Eichleay* recovery and standby as follows:

> (a) Count I: *Ordered and Constructive Suspensions of Work.* In general, Alderman alleges that the Navy "delayed the start of Big John's work, by delaying the Notice to Proceed and by successively revising the date the job site would be available and work could start" (compl. ¶ 27). Alderman then makes particular allegations regarding the delays in the start date, and alleges that the delays were unreasonable, that they were due to the Navy's convenience, and alleges entitlement to extended and unabsorbed home office overhead costs on behalf of Big John's (*id.* ¶¶ 28-46).

3

(c) Count III: *Eichleay Claim and Prerequisites*. In general, Alderman alleges that it meets the requirements for application of the Eichleay formula, "[e]ven with use of an alternate method of computation" (*id.* ¶ 79).

Alderman also alleges entitlement to recovery of unabsorbed overhead using a methodology other than the *Eichleay* formula, including the Changes clause (*id.* ¶ 125) and quantum meruit (*id.* ¶¶ 131-35).

10. The Navy cites three email exchanges that are said to show that it did not require Alderman to resume work immediately and at full speed (Respondent's Cross Motion for Summary Judgment and Response in Opposition to Appellant's Motion for Partial Summary Judgment Regarding (1) Unabsorbed Overhead Under Alternative to Eichleay Formula and (2) Standby Labor Costs (gov't opp'n) at 9-10, 13). We find that none are conclusive. The first cited exchange is dated 1 February 2010 between Alderman, Big John's, and the Navy. It was, by its terms, technical in nature, initiated by the subcontractor's expression of "a few concerns with a partial turn over of the building" regarding "several circuits." (R4, tab 4.5) The second cited exchange is between the OICC and Alderman on 28 January and 2 February 2010 regarding "New Developments." It relates to arrangements to have "temp. power going before the start date," to avoid consuming time on such arrangements when work ultimately began. (R4, tab 4.6) The third cited exchange is between the OICC and Alderman on 1-2 February 2010 regarding the cost of doing inside work while the building was partially occupied, as well as tracking "contractual impacts...due to the government delays [for] a revised cost proposal" (R4, tab 5.27).

11. Alderman has tendered an expert report from Roger K. Seals, Ph.D, P.E., a retired professor of Civil and Environmental Engineering at Louisiana State University, in support of its motion. He set forth an alternative methodology to the *Eichleay* formula (Seals rpt. at 14-18).

12. Alderman has also tendered the affidavit of Mr. Dougherty, Big John's project manager, in support of its motion. Mr. Dougherty attests that "the project was delayed 8 times from the original date of June 1, 2009 to February 19, 2010" (Dougherty aff. ¶ 6). With respect to the OICC's 27 May 2009 email regarding the first post-award delay (*see* statement 4), he attested that the email resulted from Alderman's request for clarification of the start date, but that the Navy "failed to give a definite date for ending the delay" (Dougherty aff. ¶ 11). Mr. Dougherty also stated that "Big John's kept 2 workers on standby as floated or nonproductive labor during the period from 3 June 2009 to 17 February 2010." These workers "would be a full crew and would be able to commence work...immediately." (*Id.* ¶¶ 31, 33)

4

## DECISION

### A. *Motion for Summary Judgment*

In its present motion, Alderman "seeks partial summary judgment that the Navy delayed and suspended Big John's work from 1 June 2009 to 19 February 2010, for a total of 263 days of delay" (Alderman's Motion for Partial Summary Judgment Regarding (1) Unabsorbed Overhead Under Alternative to Eichleay Formula and (2) Standby Labor Costs and Supporting Memorandum (mot.) at 5). Alderman contends that the Navy's eight delays of Big John's start dates is uncontroverted, and that such pre-performance delays are unreasonable and hence compensable under the Suspension of Work clause in the prime contract (*id.* at 5-10). Alderman maintains that alternative methods to the *Eichleay* formula may be used in "all government-caused suspensions where contractor performance on-site has not yet begun," and that its expert's proffered method, which is based upon direct labor costs incurred and attributable to keeping forces on standby during the delay period, is an appropriate alternative (*id.* at 12-28). *See Eichleay Corp.*, ASBCA No. 5183, 60-2 BCA ¶ 2688 at 13,568, *aff'd on reh'g*, 61-1 BCA ¶ 2894 (detailing formula).

### B. *Cross-Motion for Summary Judgment*

In opposing Alderman's motion, and cross-moving for summary judgment in its own right, the Navy asserts that Alderman is not entitled to recover unabsorbed overhead. The Navy maintains that the *Eichleay* formula is the exclusive means for calculating unabsorbed overhead, except in the "narrowly tailored instance" of the government's issuance of a termination for convenience before contract award (gov't opp'n at 1). The Navy accordingly urges that Alderman "is not entitled to unabsorbed overhead because the delay period occurred prior to contract performance and the Respondent did not issue a contract termination for convenience" (*id.* at 5). The Navy also argues that, even if Alderman fell within the "narrowly tailored instance" for entitlement to unabsorbed overhead, it would still not satisfy the three prerequisites set forth in *Nicon, Inc. v. United States*, 331 F.3d 878, 883 (Fed. Cir. 2003), of: a government-caused delay of uncertain duration; an extension of time for performance or additional costs because of a planned earlier completion; and being on standby and unable to take on other work during the delay (gov't opp'n at 4-11). Finally, the Navy insists that Alderman is not entitled to recover under the Suspension of Work clause, chiefly because it cannot prove that "the alleged delay caused by Respondent was unreasonable, [that] all or part of the contract was delayed and that [Alderman's] costs of contract performance increased" (*id.* at 13).

### C. *Disposition*

This is the second set of cross-motions for summary judgment in this appeal. We have previously ruled on the first. *Alderman Building Co.*, ASBCA No. 58082,

13 BCA ¶ 35,381. Of relevance to the present set of cross-motions, we denied the Navy's motion to dismiss with respect to Count I of the complaint, in which Alderman alleged ordered and constructive suspensions of work, as well as Count III, in which Alderman alleged that it met the requirements for *Eichleay* recovery, and Count VII, in which Alderman alleged a breach of warranty regarding the start date and site availability. *Id*. at 173,615-16, 173,619-20.

On summary judgment, "[o]ur task is not to resolve factual disputes, but to ascertain whether material disputes of fact–triable issues–are present." *Conner Bros. Construction Co.*, ASBCA No. 54109, 04-2 BCA ¶ 32,784 at 162,143, *aff'd, Conner Bros. Construction Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008). As with the previous cross-motions, we "evaluate each party's motion on its own merits." *BMY, A Division of Harsco Corp.*, ASBCA No. 38172, 93-2 BCA ¶ 25,704 at 127,868. With cross-motions, "[t]he fact that both parties have moved for summary judgment does not mean that [we] must grant [summary] judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). We resolve any doubt over factual issues, and draw all reasonable inferences, in favor of whichever party is opposing the motion under consideration. *Id*. at 1390-91.

After careful consideration of the parties' respective motions, we deny appellant's motion for partial summary judgment and deny respondent's cross-motion for summary judgment. We reach this disposition for the reasons set forth below.

*First*, we reject the proposition that Alderman is precluded from recovering unabsorbed overhead under the *Eichleay* formula. The Navy explains its lead argument by telling us that *Nicon* precludes any recovery of unabsorbed overhead "because the delay period [here] occurred prior to contract performance and the Respondent did not issue a contract termination for convenience" (gov't opp'n at 5).

We cannot accept this proposition. It is true that, in *Nicon*, the court of appeals held that unabsorbed overhead could not be recovered under the *Eichleay* formula for a pre-performance delay. *Nicon*, 331 F.3d at 884-85. But the court in *Nicon* addressed "a unique factual situation" in which a contractor sought unabsorbed overhead for the delay period between contract award and a termination for convenience, where the contractor "was never permitted to perform any aspect of the contract." *Id*. at 883. The court acknowledged that "the *Eichleay* formula…is the exclusive formula for the calculation of damages for unabsorbed overhead due to a period of government-caused delay in situations which contract performance has begun." *Id*. at 888. But the court stressed that its holding did not extend to cases in which "performance of the contract does eventually occur or resume after the government-caused delay." *Id*. at 883. In such cases, by contrast to the situation in *Nicon*, there are "actual 'contract billings' [and] 'days of performance' to use in the formula." *Id*.

6

Inasmuch as Alderman did eventually perform its contract, and Big John's eventually performed its subcontract (statement 6), we decline Alderman's invitation to look to the Suspension of Work clause (*see* statements 2, 9), or to some other source beyond the *Eichleay* formula (*see* statement 11), as the measure of recovery. Instead, we must look to the *Eichleay* formula as "the exclusive formula for calculation of damages for unabsorbed overhead due to government-caused delay in situations in which contract performance has begun," *Nicon*, 331 F.3d at 888, assuming that Alderman also meets the prerequisites to application of the formula.

*Second*, we reject the Navy's argument that it is entitled to summary judgment because Alderman also cannot establish the prerequisites to *Eichleay* recovery. At the same time, we reject Alderman's argument that it is entitled to partial summary judgment regarding those prerequisites.

It is familiar that "[t]he three elements necessary to recover *Eichleay* damages are: (1) a government-imposed delay occurred; (2) the government required the contractor to 'stand by' during the delay; and (3) while 'standing by,' the contractor was unable to take on additional [*i.e.*, replacement] work." *Satellite Elec. Co. v. Dalton*, 105 F.3d 1418, 1421 (Fed. Cir. 1997). We address each of these elements below.

### 1. *Uncertain Duration*

The Navy argues that "[t]hroughout the delay period, Respondent provided Appellant with future definite start dates," (gov't opp'n at 7), and hence the delays were not of uncertain duration. *See Interstate Gen. Gov't Contractors, Inc. v. West*, 12 F.3d 1053, 1056 (Fed. Cir. 1993) (reciting that "there must have been a government-caused delay of uncertain duration"). The Navy also tells us, however, that "[a]t minimum…there is a material issue of fact in dispute over whether there was an indefinite suspension" (gov't opp'n at 8). For its part, Alderman contends that evidence in the record, as well as submissions with the motion, establish that "the period of delay was indefinite" (Alderman's (1) Opposition to Navy's Cross-Motion for Partial Summary Judgment; (2) Reply to Navy's Opposition to Alderman's Motion for Partial Summary Judgment Regarding Eichleay Alternative & Standby Costs; and (3) Supporting Memorandum (app. resp.) at 7).

We reject the Navy's characterization of the record and grant partial summary judgment to Alderman to the extent we find there were delays of uncertain duration. In his suspension letter the contracting officer simply ordered a suspension "until further notice" (statements 4, 5), not until a "future definite start date[]" (gov't opp'n at 7). Other delays – those announced by the emails dated 27 May 2009, 19 June 2009, 9 July 2009, 8 December 2009 and 2 February 2010 (statement 4) – are manifestly "ballpark" dates, lacking definiteness by their terms. Others – those

7

announced in the emails dated 1 July 2009, 30 September 2009, 18 November 2009 and 8 December 2009 emails (*id.*) – provided dates certain which thereafter were not implemented. We accordingly conclude that there is no triable issue that portions of the total delay period were of uncertain duration.

### 2. *Standby*

The Navy argues that Alderman cannot demonstrate that it was on standby. The Navy tells us that neither direct nor indirect evidence satisfies the formulation in *P.J. Dick Inc. v. Principi*, 324 F.3d 1364, 1371 (Fed. Cir. 2003), requiring proof that "during [the] delay [the contractor] was required to be ready to resume work…at full speed as well as immediately" (gov't opp'n at 8-10). The Navy urges that three email exchanges between Alderman, Big John's, and the Navy (*see* statement 10) establish that it "never required [Alderman] to keep workers, including the subcontractors, idle on-site during any delay period" (gov't opp'n at 10). The Navy then asserts that, "[a]t minimum, the evidence demonstrates that there is a material issue of fact in dispute with regard to…Appellant's contention that they were on standby" (*id.*). For its part, Alderman cites the Dougherty affidavit (statement 12) and the Seals report (statement 11) to tell us that the standby evidence is uncontroverted in its favor (app. resp. at 8).

By pointing to three email exchanges, the Navy fails to demonstrate the absence of a triable issue regarding standby. At the same time, the Dougherty affidavit and the Seals report that Alderman relies upon show that it had employees on standby during the delay period, but leaves open the question of whether they were "required to be ready to resume work" by the Navy. *P.J. Dick*, 324 F.3d at 1371. We accordingly conclude that there is a triable issue regarding standby.

### 3. *Inability to Take On Replacement Work*

The Navy argues that it "can demonstrate [that] Appellant did or could take on replacement work" (gov't opp'n at 11). The Navy tells us that it has met its burden on the issue "through facts submitted by Appellant that clearly demonstrate Appellant mitigated its losses during the delay period" (*id.*). Nonetheless, the Navy also asserts that the issue "remains contested between the parties and not ripe for summary judgment" (*id.* at 12).

For its part, Alderman contends that the Navy "did not revise each of its successive start-dates until days before work was to start each time, and then moved the revised start-date to only a few short days or weeks later," which interfered with replacement work (mot. at 24-25). Alderman also argues that the replacement work that Big John's did acquire was insufficient to replace the work lost due to government-caused delays (*id.* at 25-26).

8

This issue is inappropriate for summary disposition. There are eight suspensions at issue (statement 4). Determination of the merits of Alderman's contention that the Navy revised the start-dates for each too soon to permit Alderman to take on replacement work calls for evidence regarding each such date on a fully developed record.

## CONCLUSION

Appellant's motion for partial summary judgment is granted to the extent indicated. Respondent's cross-motion for summary judgment is denied.

Dated: 9 December 2014

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58082, Appeal of Alderman Building Company, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9