908 So.2d 536 (2005)
BROWARD COUNTY, a political subdivision of the State of Florida, Appellant,
v.
BROOKS BUILDERS, INC., Appellee.
No. 4D04-2715.
District Court of Appeal of Florida, Fourth District.
July 27, 2005.
*537 Edward A. Dion, Andrew J. Meyers, and James D. Rowlee, Fort Lauderdale, for appellant.
Bruce Charles King of Carlton Fields, P.A., Miami, for appellee.

OPINION ON REHEARING
POLEN, J.
We grant appellee's motion for rehearing in part, withdraw our slip opinion of June 8, 2005, and substitute the following in lieu thereof. By so doing, we correct our ruling as to appellee's claim for unpaid/underpaid work.
Appellant, Broward County, has timely appealed a final judgment in favor of the Appellee, Brooks Builders, Inc., challenging different aspects of the damage award. We reverse for the reasons that follow and remand with instructions to conduct further proceedings consistent with this opinion.
This case arises from a contract in which Broward County hired Brooks to build a fire station adjacent to a runway at the Ft. Lauderdale airport. The material facts are largely undisputed. The project was *538 originally scheduled to be completed in October 2001 for $5,480,025. Although the structure itself was not complicated to build, the location, i.e., an active runway, presented significant challenges and resulted in numerous delays. The certificate of substantial completion was not ultimately issued until July 17, 2002.
Due to the sensitive location of the construction site, the contract expressly required strict compliance with all airport security measures, including entry and exit procedures. Understandably, these security measures increased significantly after the tragic terrorist attacks carried out on September 11, 2001, causing even greater delays. In light of the numerous delays, both due to 9/11 and the rephrasing of the architectural plans, Brooks submitted timely notifications to the county and requested extensions of time and additional compensation. Various change orders were issued authorizing additional work in the aggregate amount of $386,221.86. One specific work item was only partially paid by the county because there was a dispute as to the correct value. Brooks sought an additional $12,145.42 for that specific work item. Many other change orders, however, were denied. Brooks also submitted additional compensation requests, in the amount of $75,511.40, for work that had not been authorized, which were denied by the county. Finally, after the project was long since completed, Brooks submitted a request for additional compensation for $72,252.76 for unauthorized work performed by its subcontractor and $133,426.33 for unauthorized work Brooks had to complete after Brooks terminated the subcontractor mid-progress.
In December 2002, Brooks filed suit against Broward County alleging breach of contract in which it sought damages for post-9/11 delays, compensation for unpaid and underpaid work, and Eichleay[1] damages, which relate to home office overhead costs. Broward County counterclaimed for defective work and delay damages. The parties proceeded to a non-jury trial. Pursuant to Brooks' post-trial memorandum of law, Brooks requested $292,887.40 in damages for unpaid and underpaid work, $217,745.10 in damages for post-9/11 gate delays, $508,280.20 in damages for direct field costs and unabsorbed home office overhead arising from construction delays, and $129,223.63 in pre-judgment interest. The trial court entered a final judgment for Brooks, awarding Brooks $1,018,912.71 in damages and $129,223.63 in prejudgment interest. Broward County was not awarded any damages on its counterclaim. Although the trial court's final judgment did not itemize its award of damages, the total figure corresponds exactly with Brooks' post-trial memorandum of law.[2]
Broward County first challenges the apparent award of damages for post-9/11 gate access delays, arguing that the construction contract does not provide for such damages. "The interpretation of a written contract is a question of law to be decided by the court. An appellate court is not bound to give the trial judge's interpretation or construction of a contract any weighted presumption of correctness." Atlanta Jet v. Liberty Aircraft Servs., LLC, 866 So.2d 148, 150 (Fla. 4th DCA 2004) (citing Gilman Yacht Sales, Inc. v. FMB Invs., Inc., 766 So.2d 294, 296 (Fla. 4th DCA 2000)). Notably, the trial court failed to make any findings of fact or conclusions of law in its final judgment to explain its reasoning. This court, while *539 acknowledging such findings and conclusions may not be mandated, noted:
Findings of fact and an analysis by the trial court are, however, extremely helpful to appellate court review. Without them, the appellate court may not understand the logic the trial court perceived in its result. Where they are absent, the appellate court must determine whether, based upon the record, the proper analysis would have produced the result reached by the trial court.
Town of Jupiter v. Alexander, 747 So.2d 395, 400 (Fla. 4th DCA 1998).
The post-9/11 delays for which Brooks sought additional compensation occurred daily as the construction workers spent significant time gaining access to the airfield through the security gates. The construction contract at bar did not anticipate any extraordinary delays resulting from the aftermath of 9/11, as 9/11 itself was unforeseen, apparently even by our country's intelligence agencies. Nevertheless, there are numerous provisions in the construction contract suggesting that any risk of loss for unexpected changes in conditions was to be fully assumed by Brooks. The provision that Brooks relies upon most heavily in arguing that the construction contract authorizes an award of damages for post-9/11 gate access delays is Article 80-06, which provides:
In the event that the Contractor is ordered by the Engineer, in writing, to suspend work for some unforeseen cause not otherwise provided for in the contract and over which the Contractor has no control, the Contractor may be reimbursed for actual money expended on the work during that period for shutdown.... No provision of this article shall be construed as entitling the Contractor to compensation for delays due to inclement weather, for suspensions made at the request of the Contractor, or for any other delay provided for in the contract, plans, or specifications.
However, the post-9/11 gate access delays were not orchestrated by any orders of Broward County's engineer. Brooks' strained interpretation of this provision so as to authorize damages for post-9/11 gate access delays is an interpretation we are unwilling to accept. Accordingly, we reverse that portion of the final judgment which awarded damages for post-9/11 gate access delays.
Broward County next challenges the apparent award of damages for unpaid and underpaid work. We reject the county's argument for reversal on the basis of sovereign immunity, as we find it unpersuasive. However, the county also contends that the express terms of the construction contract bar any claims for additional compensation. Broward County asserts two separate arguments of which we find only one to be persuasive.
Section 50-16 of the contract provides that any claims for additional compensation must be submitted within ten calendar days after completion of the work. While most of Brooks' claims complied with section 50-16, Brooks did not submit a final accounting of the additional $133,426.33 in costs it incurred in completing work it undertook on behalf of its subcontractor until more than one year after completion. This claim is barred by the express terms of the construction contract. As such, we remand with instructions that this item be excluded from the damage award.
Broward County's final challenge on appeal is the award of Eichleay damages. This court has adopted the federal approach to Eichleay damages. See Broward County v. Russell, Inc., 589 So.2d 983 (Fla. 4th DCA 1991).
The damages at issue are damages which are awarded, pursuant to Eichleay, *540 to a government contractor who suffers unabsorbed home office overhead when the government delays work on the contract indefinitely but requires the contractor to remain available to resume work immediately on the government's instruction. The rationale for such damages is explained, thusly: Home office overhead costs are those [costs] that are expended for the benefit of the whole business, which by their nature cannot be attributed or charged to any particular contract. They are fixed costs that are allocated on a pro-rata basis among various contracts. When the government delays or disrupts contract performance, the contractor's stream of income decreases while the fixed costs allocated to that contract continue. The Eichleay formula "seeks to equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay. . . ."
Entitlement to Eichleay damages depends on proof of three elements: (1) a government-imposed delay occurred; (2) the government required the contractor to "standby" during the delay; and (3) while "standing by," the contractor was unable to take on additional work. Once the contractor proves the first two elements, a prima facie case of entitlement to Eichleay damages is established, the burden of production then shifts to the government to show either (1) that it was not impractical for the contractor to obtain `replacement work' during the delay, or (2) that the contractor's inability to obtain such work, or to perform it, was not caused by the government's suspension.
Triple R Paving, Inc. v. Broward County, 774 So.2d 50, 57 (Fla. 4th DCA 2000) (citations omitted).
The Federal Circuit Court of Appeals, however, has recently clarified its position on the extent of the suspension necessary to satisfy the standby requirement in P.J. Dick Inc. v. Principi, 324 F.3d 1364, 1371 (Fed.Cir.2003). We adopt the following clarification:
The contractor must show effective suspension of much, if not all, of the work on the contract. . . . [E]very case where this court has held a contractor to be placed on standby has involved a complete suspension or delay of all the work or at most continued performance of only insubstantial work on the contract. See, e.g., E.R. Mitchell Constr. Co. v. Danzig, 175 F.3d 1369, 1372, 1374 (Fed.Cir.1999) (holding subcontractor was entitled to Eichleay damages where it performed "some work" on the contract, but where most "work could not proceed until the faults [causing the suspension] were cured"); [West v.] All State Boiler, Inc., 146 F.3d [1368] at 1370, 1373 (Fed.Cir.1998) (holding contractor was entitled to Eichleay damages where the government suspended all work on the contract); Satellite Elec. Co. v. Dalton, 105 F.3d 1418, 1421 (Fed.Cir.1997) (holding contractor was on standby where all the work on the contract was stopped).... In addition to being implicit in our early cases, our later decisions explicitly state that such a suspension or delay of the work on the contract is a prerequisite to a finding that the government placed the contractor on standby. In Melka [Marine, Inc. v. United States, 187 F.3d 1370, 1375 (Fed.Cir.1999)], we held that a contractor was not on standby where it "was working on the contract and the government had not suspended all contract work." There, the government stopped work on one type of work, but, by resequencing the work under the contract, the contractor was able to perform substantial work on another type of work with comparable direct cost billings. Id. *541 at 1375-76. [See also] Carousel Dev., Inc., ASBCA No. 50719, 2001-1 B.C.A. (CCH) ¶ 31,262, 2001 WL 66657, 2001 ASBCA Lexis 9, at *56-57 (ASBCA Jan. 23, 2001) (concluding contractor was not on standby where it continued to perform substantial amounts of work on the contract-here "approximately one quarter of the entire scope of the contract work").
P.J. Dick, 324 F.3d at 1371-73.
Brooks' principal testified that Brooks faced delays at "virtually every turn" because "either the plans were deficient and we had trouble getting a response" or "we couldn't get change orders" and "we couldn't get anything we needed in the way of support from either the owner or the architect." When questioned as to whether work continued nonetheless, Brooks' principal answered "We kept working the best we could. Although, I must say it wasn't in a sufficient manner." Such an answer does not demonstrate effective suspension of much, if not all, of the work on the contract. Furthermore, there is a trial exhibit documenting Brooks' substantial monthly invoices.[3] These monthly invoices appear to suggest the exact opposite, namely that work continued. Accordingly, we find that the trial court did err, to the extent that it awarded Eichleay damages. However, because the Final Judgment does not itemize the damages and there is a $2,983.21 discrepancy between the amount of damages (Eichleay and direct field costs) Brooks sought at trial and in its post-trial memorandum of law, the exact amount of Eichleay damages that Brooks was awarded is not entirely clear. Consequently, we again remand with instructions that the exact amount of Eichleay damages awarded should be calculated and subtracted from the Final Judgment. To the extent possible, the trial court should rely on the previous record in making all adjustments and conduct further evidentiary hearings only if necessary.
Reversed and Remanded.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] Eichleay Corp., ASBCA No. 5183, 60-2 B.C.A. (CCH) ¶ 2688 (ASCBA 1960).
[2] There is an extra unexplained penny.
[3] Payment # Date Requested Amount
 1 06-13-00 $306,761.00
 2 07-05-00 $266,128.92
 3 08-21-00 $137,316.83
 4 09-06-00 $143,008.58
 5 10-04-00 $399,122.73
 6 11-07-00 $260,157.37
 7 12-08-00 $254,535.35
 8 01-05-01 $177,943.25
 9 02-02-01 $191,682.77
 10 03-08-01 $284,550.46
 11 04-05-01 $385,981.20
 12 05-03-01 $270,521.79
 13 06-04-01 $440,663.35
 14 07-03-01 $439,217.74
 15 08-07-01 $331,199.55
 16 09-10-01 $270,494.24
 17 10-01-01 $170,137.68
 18 11-07-01 $248,204.64
 19 12-06-01 $318,894.50
 20 01-02-02 $245,175.55
 21 02-04-02 $ 76,464.26
 22 03-04-02 $109,483.86
 23 03-27-02 $131,404.14
 24 10-11-02 $ 14,299.21