GERBER, J.
In this appeal, we maintain our previous holdings that a contractor seeking entitlement to recover home office overhead damages from the government must prove that a government-imposed delay required the contractor to indefinitely stand by to the point that the contractor was effective *128 ly suspended and unable to take on additional work. Here, because the contractor’s evidence at trial showed that it could not meet the entitlement prerequisites, we reverse the award of home office overhead damages to the contractor.
To provide better context for our holding, this opinion first will review the seminal case on home office overhead damages, Appeal of Eichleay Corp., ASBCA No. 5183, 60-2 B.C.A. (CCH) ¶ 2688, 1960 WL 538 (ASBCA 1960). Then we will review our three prior cases which developed the law in Florida regarding home office overhead damages. After that, we will examine this case, our holding, and our rationale. Finally, we will address preservation and remand issues requiring our resolution.

Eichleay and, its Progeny

In Eichleay, the Armed Services Board of Contract Appeals (the “board”) confronted a dispute between the government and a contractor over how to allocate the contractor’s home office expenses incurred during a suspension of work, where it was not practical for the contractor to undertake other work which might absorb those expenses. Id,. The board recognized that “[t]here is no exact method to determine the amount of such expenses to be allocated to any particular contract or part of a contract.” Id. Therefore, the board accepted a formula based on:
an allocation of the total recorded main office expense to the contract in the ratio of contract billings to total billings for the period of performance. The resulting determination of a contract allocation is divided into a daily rate, which is multiplied by the number of days of delay to arrive at the amount of the claim.

Id.

We first examined home office overhead damages and the Eichleay formula in Broward County v. Russell, Inc., 589 So.2d 983 (Fla. 4th DCA 1991), where we described the formula using the following diagram:
[[Image here]]
Id. at 984 n. 1. We held that “use of the Eichleay formula for the calculation of home office overhead damages is proper as long as there is competent evidence of actual damages of this variety having been sustained by the party seeking relief.” Id. at 984. However, we did not set forth the elements to prove entitlement to home office overhead damages.
Next, in Triple R Paving, Inc. v. Broward County, 774 So.2d 50 (Fla. 4th DCA 2000), we set forth the elements to prove entitlement to home office overhead damages:
Entitlement to [home office overhead] damages depends on proof of three elements:
(1) a government-imposed delay occurred; (2) the government required the contractor to “standby” during the delay; and (3) while “standing by,” *129 the contractor was unable to take on additional work.
Once the contractor proves the first two elements, a prima facie case of entitlement to [home office overhead] damages is established, [and] the burden of production then shifts to the government “to show either (1) that it was not impractical for the contractor to obtain ‘replacement work’ during the delay, or (2) that the contractor’s inability to obtain such work, or to perform it, was not caused by the government’s suspension.”
Id. at 57 (internal citations omitted).
Finally, in Broward County v. Brooks Builders, Inc., 908 So.2d 536 (Fla. 4th DCA 2005), we clarified Triple R’s “standby” element as follows: “The contractor must show effective suspension of much, if not all, of the work on the contract.” Id. at 540 (citation omitted).
The question presented in this case is whether we should maintain our previous holdings from Triple R and Brooks Builders that a contractor seeking entitlement to recover home office overhead damages from the government must prove that a government-imposed delay required the contractor to indefinitely stand by to the point that the contractor was effectively suspended and unable to take on additional work. Thus, we turn to this case.

The Instant Case

Martin County (the “county”) and Poliv-ka Paving, Inc. (the “contractor”) entered into an agreement whereby the contractor would construct soccer fields and related improvements at a county park for payment of $1,662,835.71. After clearing the site, the contractor realized that the county’s representations regarding the site’s conditions were different from the site’s actual conditions. Ultimately, the contractor added more fill than the county estimated to raise the elevation. The contractor also required several months beyond the contract’s completion date to finish the project. As work progressed, the county and the contractor agreed on change orders for some work which increased the price and extended the time of the contract. However, when the contractor finished the project, the county did not pay the contract balance. The county also did not pay for additional fill and repairs which the contractor performed.
The contractor sued the county for breach of contract. The contractor sought damages for the contract balance, the additional fill, and the repairs. The contractor also sought to recover “field office” overhead and “home office” overhead which it incurred from the original completion date to the actual completion date. At trial, the contractor’s expert testified that “field office” overhead means costs directly attributable to the project, such as the work trailer, sanitation, utilities, tools, and fuel. The expert testified that “home office” overhead means “costs associated with the home office that [are] funded by the projects ... which the company is performing.”
The contractor’s expert then turned to his method of calculating the contractor’s home office overhead damages, which method he later described as an “extended performance analysis.” The expert testified that this project represented about fifty percent of the work which the contractor intended to perform that year, and should have contributed that percentage of money to the contractor’s home office overhead during that time. The expert used that percentage to calculate the amount of money which the contractor’s additional work should have contributed to the contractor’s home office overhead during the extension period. The expert calculated that amount to be $550,501.93.
*130 The contractor’s expert testified that he was familiar with the Eichleay formula, but did not utilize it in this case. The expert explained that “Eichleay would be for a suspension ... and this job was never specifically suspended.” The expert added that the contractor, during this job, had other ongoing jobs which contributed to paying the contractor’s home office overhead. Despite those factors, the expert argued that the contractor still should be entitled to recover home office overhead damages because the county’s nonpayment caused the contractor to consume cash from its own accounts and, in turn, caused the contractor’s bonding company to refuse to provide bonds for new projects. The expert added that the contractor did not have the necessary cash reserves to take on new work because it would have been a financial hardship or possibly would have caused the contractor to run out of money on a new project.
After the contractor rested, the county moved for a directed verdict on, among other things, the contractor’s home office overhead claim. The county, citing our decisions in Russell, Triple R, and Brooks Builders, argued that the Eichleay formula was the “binding doctrine” for calculating home office overhead damages in this district. The county then contended that Eichleay’s application depended on a suspension of work, and because the contractor’s expert conceded there was no suspension, the contractor could not meet its burden of proof. In response, the contractor recognized that the Eichleay formula required a suspension and the inability to obtain other work, and that its expert did not use the Eichleay formula because there was no suspension. However, the contractor argued that the Eichleay formula is the method to use if there has been a suspension, and a different method could apply when there has been no suspension.
The court denied the county’s motion for directed verdict on the home office overhead claim and allowed that claim to go to the jury. However, the court wisely required that claim to be a separate item on the verdict form so that, if this court reversed the denial of the motion for directed verdict, any amount which the jury awarded for that claim could be subtracted, and the remainder of the judgment could stand.
The jury found that the county breached the contract, and that the contractor’s damages totaled $743,620.00. That amount included $275,251.00 for home office overhead damages, which was exactly half of what the contractor sought for that claim. After entry of final judgment, this appeal followed.
The county contends that the trial court erred in denying the motion for directed verdict on the contractor’s home office overhead claim. Mirroring the arguments which it made to the trial court, the county contends that: this court, in Russell, Triple R, and Brooks Builders, held that a contractor may recover home office overhead damages only by using the Eichleay formula; such claims require proof of a government-ordered suspension of work; the contractor admitted the county never ordered the suspension of work; and, therefore, the contractor cannot seek to recover its home office overhead damages using a methodology other than the Ei-chleay formula.
The contractor responds that the county’s attempt to make the Eichleay formula be the sole means of calculating home office overhead contravenes the basic precept of contract law that a party is entitled to recover damages which foreseeably flow from the breach. According to the contractor, there are no cases which support the proposition that, if the Eichleay formu *131 la is not used or cannot be used, home office overhead damages cannot be recovered. Rather, the contractor, citing cases from other jurisdictions, claims that home office overhead damages are routinely recovered under methodologies other than the Eichleay formula.
Our standard of review of these arguments is de novo for two reasons. First, these arguments come before us on appeal from a denial of a motion for directed verdict, and “[t]he standard of review on appeal of the trial court’s ruling on a motion for directed verdict is de novo.” Fina v. Hennarichs, 19 So.3d 1081, 1084 (Fla. 4th DCA 2009) (citation omitted). Second, the means of proving entitlement to home office overhead damages is a question of law, and a question of law is subject to the de novo standard of review. Bakerman v. Bombay Co., 961 So.2d 259, 261 (Fla.2007).

Our Holding and Rationale

We maintain our previous holdings from Triple R and Brooks Builders that a contractor seeking entitlement to recover home office overhead damages from the government must prove that a government-imposed delay required the contractor to indefinitely stand by to the point that the contractor was effectively suspended and unable to take on additional work. Because the contractor’s evidence at trial showed that it could not meet the entitlement prerequisites, the trial court should have directed a verdict for the county on the contractor’s home office overhead damages claim. See Triple R, 774 So.2d at 55 (“Only where there is no evidence upon which a jury could properly rely in finding for the plaintiff, should a directed verdict be granted.”) (citation omitted). This holding is consistent with our decision in Brooks Builders, where we found that a trial court erred in awarding home office overhead damages to a contractor which faced delays, but continued work nonetheless. 908 So.2d at 541.
The contractor’s argument to abandon the entitlement prerequisites in favor of a more general approach to entitlement— recovering damages which foreseeably flow from the breach — ignores our previous definition of home office overhead damages and the rationale supporting such damages. In Triple R, we described home office overhead damages as
damages which are awarded ... to a government contractor who suffers “unabsorbed home office overhead when the government delays work on the contract indefinitely but requires the contractor to remain available to resume work immediately on the government’s instruction.”
774 So.2d at 57 (quoting Satellite Elec. Co. v. Dalton, 105 F.3d 1418, 1419 (Fed.Cir.1997) (emphasis added)). We then explained the rationale for such damages:
Home office overhead costs are those [costs] that are expended for the benefit of the whole business, which by their nature cannot be attributed or charged to any particular contract. They are fixed costs that are allocated on a pro-rata basis among various contracts.
Id. at 57 (quoting Satellite Elec., 105 F.3d at 1421) (emphasis added).
We derived our definition and rationale from the Federal Circuit Court of Appeals, which more extensively examined the rationale behind the entitlement prerequisites in Wickham Contracting Co. v. Fischer, 12 F.3d 1574 (Fed.Cir.1994). In that case, a contractor sought to recover 80% of its home office overhead due to a government-delayed project even though it was working on two other projects at the same time. The contractor argued that it managed 80% of the project at issue from its *132 home office, while it managed the other two projects mainly on site. The federal circuit rejected the contractor’s recovery theory, reasoning:
[The contractor’s] argument fails for a fundamental reason — [the contractor] confuses direct and overhead costs. As the [lower tribunal] noted, overhead costs benefit and are caused by the business as a whole, not any one project. Thus, overhead costs are never attributable to or caused by any one contract. [The contractor’s] claim to a “directly attributable” home office overhead is a non sequitur. If a cost is directly attributable to a contract, then it is a direct cost, not an overhead cost.
[[Image here]]
Unlike direct costs which are incurred only because of a particular contract, overhead costs are incurred even if the contractor had not undertaken a particular project. Ordinarily, all home office expenses fall into the overhead category because the contractor must operate a home office in order to seek work and administer contracts whether or not he is performing a particular contract. For instance, a contractor must provide for the home office space, pay for utilities pertaining to that space, pay licensing fees and officer’s salaries even when the contractor has no current contracts and is merely seeking work.
Given this established definition of overhead costs, the very premise of [the contractor’s] argument is incorrect. [The contractor] contends that because 80% of its home office activity related to the [project], 80% of its home office costs is directly attributable to that contract. [The contractor] fails to recognize that a cost is directly attributable to a contract only when the cost is caused by the contract. The [project] did not cause 80% of [the contractor’s] home office costs because [the contractor] would have incurred the individual cost components of the home office overhead whether or not it ever undertook the [project]. For instance, the [project] did not cause 80% of [the contractor’s] home office rent even if 80% of the activity in that office related to the [project]. Because [the contractor] would have incurred the same or similar rental expense in any event, no portion of the rent is directly attributable to the [project],
12 F.3d at 1578-79 (internal footnotes omitted).
The Wickham rationale applies here. Like the contractor in Wickham, the contractor in the instant case had other ongoing jobs which contributed to paying the contractor’s home office overhead. Thus, the contractor here essentially is seeking to recover the home office overhead costs which are directly attributable to this contract. As the federal circuit stated, such a recovery theory confuses direct and overhead costs. The contractor would have incurred the individual cost components of the home office overhead whether or not it ever undertook the project at issue. Because the contractor would have incurred the same or similar costs in any event, no portion of those costs are directly attributable to the project at issue and, therefore, are not recoverable as “overhead” costs. See also West v. All State Boiler, Inc., 146 F.3d 1368, 1377 (Fed.Cir.1998) (“[A] contractor is injured only when it cannot reallocate that portion of its indirect costs to an alternative or substitutional contract, and thereby those costs are unabsorbed. When a contractor is able to reallocate its indirect expenses to a contract it obtains beyond the work it performs in the ordinary course of business, however, it sustains no injury-”).
*133 The dissent argues that today we have imposed an artificial restriction on establishing home office overhead damages for a government-created delay in performance — suspension as a prerequisite to entitlement. However, this prerequisite is not new. It has been the law in this district since we issued Triple R ten years ago, and since our clarification in Brooks Builders five years later. It also remains as the law of the federal circuit from which our opinions derived.
Instead, the dissent seeks to carve out an exception when the contractor seeks to prove home office overhead expenses it sustained from the government’s wrongdoing. While we recognize that government is not immune from liability for its own wrongdoing in this context, we also must balance the fact that taxpayers ultimately bear the burden of such wrongdoing. See Wickham, 12 F.3d at 1580 (the Eichleay formula “adequately compensates the contractor without unduly burdening the taxpayers”). Here, we believe that the contractor has been adequately compensated for the county’s wrongdoing. Therefore, we see no reason to unduly burden the taxpayers by expanding the scope of damages.

Preservation Issue

In finding for the county on the home office overhead claim, we reject the contractor’s argument that the county waived its right to dispute the claim by failing to object to the evidence at the time it was accepted, and instead waiting to raise the issue on a motion for directed verdict. In so doing, we limit the scope of the case upon which the contractor primarily relies, Aspen Investments Corp. v. Holzworth, 587 So.2d 1374 (Fla. 4th DCA 1991).
In Aspen, a plaintiff seeking to recover its attorney’s fees introduced testimony of the fees incurred, but did not introduce testimony that the fees incurred were reasonable. Id. at 1377. At the time the evidence was accepted, the defendant did not object concerning the failure to prove the reasonableness of the fees incurred. Id. Instead, the defendant raised that argument in a motion for directed verdict. Id. The trial court granted the motion. Id. We reversed, finding that the defendant’s failure to object to the evidence waived any right to have its objection considered on a motion for directed verdict. Id. We reasoned:
To hold otherwise would allow a party to lure the other side into believing that evidence on a necessary element of proof is before the court by not objecting to its introduction and then permitting that party to subsequently ask the court to disregard that evidence after the opponent has rested.

Id.

We limit the scope of Aspen to situations in which the failure of proof reasonably can be cured during trial. In Aspen, for example, had the defendant objected, the plaintiff may have cured the failure of proof by calling a witness who would have testified to the reasonableness of the fees. Here, however, had the county objected, the contractor could not have cured the failure of proof. The contractor’s expert testified that he did not utilize the Ei-chleay formula because “Eichleay would be for a suspension ... and this job was never specifically suspended.” Moreover, the contractor’s daily work logs, periodic invoices, and other accounting records showed that it was never on standby.
The contractor relies upon two other cases for its argument that the county waived its right by failing to object. The procedural postures of those cases are distinguishable. See Vorsteg v. Thomas, 853 So.2d 1102, 1103 (Fla. 4th DCA 2003) (appellant never objected to sending evidence *134 to jury on grounds later asserted on appeal); Horne v. Hudson, 772 So.2d 556, 557 (Fla. 1st DCA 2000) (after denial of motion in limine, appellant never objected to evidence of prior prescription drug use).

Remand Issues

Anticipating the possibility of reversal on the home office overhead claim, the contractor argues that this court should: (1) order the trial court to recalculate damages based on the Eichleay formula; or (2) grant the contractor a new trial to submit evidence that a suspension occurred and recalculate damages pursuant to the Eichleay formula. The contractor reasons that not allowing it to recalculate its damages would violate its due process rights.
We disagree. The trial court cannot recalculate damages based on the Eichleay formula because the contractor cannot meet the entitlement prerequisites. The contractor admitted that it never incurred a suspension. Also, the contractor should not be given the opportunity to change the facts or hire a new expert who would reach a different conclusion. We further disagree that our holding violates the contractor’s due process rights. The contractor obviously was on notice that Eichleay would be an issue because it affirmatively asked its expert during direct examination whether he was familiar with the Eichleay formula, and why he did not utilize the formula in this case.
Also anticipating the possibility of reversal on the home office overhead claim, the county argues that the jury’s consideration of the claim tainted the entire outcome, warranting a new trial on all claims. We disagree. The jury does not appear to have reached a compromise verdict. See Smith v. Fla. Healthy Kids Corp., 27 So.3d 692, 694 (Fla. 4th DCA 2010) (“It is the combination of two factors: (1) hotly contested liability; and (2) legal inadequacy of damages, that is common to all compromise verdict cases.”). Moreover, where a trial court errs in awarding home office overhead damages, it is possible to remand with instructions that those damages be subtracted from the final judgment. See Brooks Builders, 908 So.2d at 541.

Conclusion

Because the trial court wisely separated home office overhead on the verdict form to minimize the effect of possible error, we remand for the trial court to subtract from the final judgment the home office overhead award and any prejudgment interest which was based upon that award.
We affirm on the county’s two other arguments on appeal. Specifically, we find the trial court did not err in denying the county’s directed verdict argument that the contract barred the contractor’s claims for additional fill, repairs, and field office costs. We also find the trial court did not abuse its discretion in selecting the contractor’s proposed dates of loss for the calculation of prejudgment interest on those claims. See Cuillo v. McCoy, 810 So.2d 1061, 1064-65 (Fla. 4th DCA 2002) (trial judge did not abuse discretion in choice of date from which prejudgment interest should run). We do not believe these findings require further detail in this opinion.

Affirmed in part, reversed in part, and remanded for entry of judgment consistent with this opinion.

DAMOORGIAN, J., concurs.
MAY, J., dissents with an opinion.