TAYLOR, J.
This appeal arises from an automobile rollover crash which rendered plaintiff, Egline Henry, paraplegic. Plaintiff appeals the trial court’s denial of her motion for directed verdict on the defendant’s seatbelt defense. We reverse because the defendant, Jena Hoelke, failed to produce competent evidence establishing a causal relationship between plaintiffs paralysis and her alleged failure to wear a seatbelt.
On February 6, 2008, plaintiff was driving home with her three-year-old daughter and a friend, Lifaite Augustin, when Hoelke made a left turn into oncoming traffic and struck plaintiffs Kia. The force of the impact caused plaintiffs vehicle to rotate in different directions, roll over, and eventually come down on the driver’s side. Hoekle did not brake before the impact; she acknowledged she did not see plaintiffs car until they collided.
Hoelke placed partial blame on co-defendant, Stephen McCulloch, for blocking her view. McCulloch was driving a 1995 Suburban and pulling out from his lane to make a left turn when he saw Hoelke’s car coming toward him. He did not see the collision between Hoekle and plaintiff, but he heard it and described the movements of the Kia after impact. McCulloch saw the car fishtail and start to go “up and over.” He saw the passenger appear to be half in and out of the Kia’s. window, with his head, shoulder, and arm out; he was never fully ejected and ended up back in the car. McCulloch could not see if plaintiff was wearing her seatbelt. Before the car stopped, he saw her come partially out of the window and the car come down on her on the driver’s side; she Too was not totally ejected.
Mr. Augustin, the passenger in plaintiffs vehicle, testified that he saw plaintiff put a seatbelt on both herself and her young child before she started driving. He said she was still wearing the seatbelt after the crash. He described how plaintiff was still in the seat, but was leaning toward the driver’s side, held in by the seatbelt. ' He said that plaintiffs head was lying on the ground, past the broken driver’s side window, as blood ran out from her body. Augustin said he took his seatbelt off and climbed through the broken passenger window. Fortunately, he and plaintiffs young child suffered only minor injuries.
Plaintiff testified that before driving home she first made sure her child was restrained in her car seat in the backseat and then put on her own seatbelt. She said that she always wears her seatbelt. She could not remember whether she took off her seatbelt after the accident, or if someone else did. She could recall only that there were several people helping her who may have removed it. As a result of the accident, plaintiff suffered a dislocation between her eleventh and twelfth vertebrae, which pinched her spinal cord, and rendered her paraplegic. Her treating neurosurgeon testified that she will most likely be paralyzed for life.
The defendant presented the deposition testimony of two experts, Dr. Neil Freeman and Dr. Joseph Burton, who were retained by plaintiff. Dr. Freeman, an engineering expert, provided accident reconstruction evidence. He explained that when plaintiffs car was hit, it rotated counterclockwise past 90 degrees. It then began to roll down on the passenger side *964 first. Dr. Freeman believed that the Kia rolled a quarter turn on the passenger side and then, after sliding on the ground for about 46 feet, came up on its wheels and went down again, this time on the driver’s side.
Dr. Joseph Burton, a forensic pathologist and medical doctor with expertise in determining whether vehicle occupants in crashes were wearing seatbelts, acknowledged that there was no hard evidence of plaintiffs use of a seatbelt in this case. He was not able to look at the seatbelts in the Kia because the car was not available, and plaintiffs medical records showed no bruising or abrasions in areas that would indicate within a reasonable probability whether she was wearing a seatbelt.
He testified that based on Dr. Freeman’s reconstruction, he could not rule out the possibility that plaintiff was wearing a seatbelt. He said:
I’m not telling you I believe that she was belted, I’m telling you I can’t rule it out. And I can’t rule out the fact that she could have undone her own belt and she could have repositioned herself.
As far as could she get the injuries inside belted or unbelted, I said that she could do that too.... A lot depends on what position she’s in when the belt locks up and whether the belt stays locked or not. If Dr. Freeman’s right in his reconstruction there’s a possibility that the belt locked up initially but began to yaw, and before it began to rollover, as the vehicle came upright and reversed its yaw and roll, that it unlocked and allowed her to have slack in the belt. So that this belt to the occupant, because of the way the belt functions, had a significant amount of slack and would have allowed her body, in some cases, to fully escape the vehicle even though she was belted.
When asked whether the use or nonuse of a seatbelt would have had any effect on the injuries sustained by plaintiff, Dr. Burton responded that the literature on seat-belt usage in rollover accidents indicates that a belted occupant is almost at the same risk for a partial ejection as one who is unbelted. When defense counsel inquired, “Could she have got the exact same fracture that she got and the injury she got by not being belted and rolling and not being ejected from this car partially?” Dr. Burton responded, “[Y]es, she could.” He explained that, based on findings by Ford’s lead engineer and developer of the Explorer, “seat belts in vehicles can’t protect occupants in rollovers because they were designed for frontal collisions.” He also cited several cases wherein Ford’s previous leading expert on rollover cases gave sworn testimony, “that if you are belted in a rollover the belt cannot prevent a partial ejection and, hence, prevent a fatal or life threatening injury.”
Before trial, plaintiff filed a motion to strike the defendants’ seatbelt defense, citing Zurline v. Levesque, 642 So.2d 1169 (Fla. 4th DCA 1994). She asserted that the record was devoid of any expert testimony or other evidence to support their seatbelt defense. The trial court denied the motion, allowing the defense to go forward at trial. Plaintiff later buttressed her argument with a memorandum of law on the impermissible stacking of inferences. She argued that the defendants would attempt at trial to establish that she was not wearing her seatbelt through witnesses who arrived at the scene after the accident, when plaintiff was no longer restrained. This would allow the jury to infer from circumstantial evidence that plaintiff was not wearing her seatbelt at the time of the accident and, without competent evidence, further infer that she suffered her injuries as a result. Plaintiff *965 contended that the defendants would rely on an impermissible stacking of inferences.
In her motion for directed verdict, plaintiff again argued that the defendants did not sustain their burden of proof regarding the affirmative seatbelt defense because they did not introduce competent evidence that there was a failure to wear the seat-belt and that the injuries resulted from the failure to wear it. She also repeated her argument regarding impermissible stacking of inferences.
Defendant Hoelke responded that taking the evidence in a light most favorable to her, the trial court should deny the motion for directed verdict. She pointed out that McCulloch did not see a seatbelt on plaintiff after the accident and that her body was positioned so that her feet were towards the back. She also noted Dr. Burton’s testimony that the best hard evidence that plaintiff was wearing a seatbelt would have been abrasions on the body and that such markings did not appear in plaintiffs medical records. The court denied plaintiffs motion for directed verdict and allowed the seatbelt defense to go to the jury-
The jury found that Hoelke’s negligence was the legal cause of injury, loss, or damage to plaintiff and that defendant McCul-loch’s negligence was not the legal cause of her damage. The jury attributed 65% negligence to Hoelke and 35% negligence to Henry. It awarded plaintiff $6,336,160.50 in damages. After the award was reduced, the trial court entered final judgment for $4,106,004.30. The trial court denied plaintiffs renewed motion for directed verdict and/or a motion for judgment notwithstanding the verdict. Plaintiff appealed. Defendant Hoelke filed a cross-appeal, challenging the trial court’s denial of her request for a setoff for the hospital’s bill.
The “ ‘standard of review on appeal of the trial court’s ruling on a motion for directed verdict is de novo.’ ” Martin Cnty. v. Polivka Paving, Inc., 44 So.3d 126, 131 (Fla. 4th DCA 2010) (quoting Fina v. Hennarichs, 19 So.3d 1081, 1084 (Fla. 4th DCA 2009)). Further, “[w]hen an appellate court reviews the trial court’s denial of a motion for directed verdict, it must ‘view the evidence and all inferences in a light most favorable to the non-mov-ant, and should reverse if no proper view of the evidence could sustain a 'verdict in favor of the non-movant.’” Conrad v. Young, 10 So.3d 1154, 1157-58 (Fla. 4th DCA 2009) (quoting Weinstein Design Grp., Inc. v. Fielder, 884 So.2d 990, 997 (Fla. 4th DCA 2004)).
Viewing the evidence in this case in the light most favorable to the defendant, we do not find sufficient evidence to support the defendant’s seatbelt defense. First and foremost, the defendant failed to introduce any evidence that plaintiff was not wearing a seatbelt at the time of the accident. McCulloch, who arrived at plaintiffs vehicle several minutes after the accident, testified that he could not say one way or the other whether plaintiff was belted. Dr. Burton, the only expert to testify on this issue, said that he was not able to determine with reasonable certainty whether or not plaintiff was wearing a seatbelt at the time of the accident. The only direct evidence of seatbelt use came from plaintiff and her passenger, who both testified that she was wearing her seatbelt.
Moreover, even if a jury question on plaintiffs use of a seatbelt was created, there was no competent evidence that plaintiffs failure to wear her seatbelt caused or substantially contributed to her injuries. In Zurline, we held that for a defendant to submit a seatbelt defense to the jury, the defendant must present competent evidence that plaintiffs failure to *966 wear the seatbelt caused or substantially contributed to her injuries. 642 So.2d at 1170. We emphasized that the burden is on the defendant to introduce competent evidence on causation for a seatbelt defense. Id. at 1171. Competent evidence of the causal relationship between the failure to use a seatbelt and the injury must not be “uncertain, speculative, or conjectural.” Id. at 1171, n. 8 (citing State Farm Mut. Auto. Ins. Co. v. Smith, 565 So.2d 751, 754 (Fla. 5th DCA), cause dismissed, 570 So.2d 1806 (Fla.1990)).
In Zurline, the plaintiff suffered severe injuries in a broadside collision. Id. at 1169. At trial, she mentioned headaches in addition to her other injuries during cross-examination. Id. at 1169-70. The defendant raised a seatbelt defense. Id. at 1170. Although the defendant proved a seatbelt was available and plaintiff did not have it on, no expert was asked whether plaintiffs failure to wear her seatbelt caused or substantially contributed to at least part of her injuries. Id. We found that “there was no competent evidence that [plaintiffs] failure to wear the seatbelt caused or substantially contributed to her injuries and for that reason the seatbelt defense should not have been submitted to the jury.” Id.
We recognized in Zurline that “[i]n some cases, a defendant will not need an expert to sustain his burden of proving the causal relationship between the injury sustained and plaintiffs failure to wear a seat belt.” Id. at 1171. For example, in Burns v. Smith, 476 So.2d 278, 279 (Fla. 2d DCA 1985), plaintiff was thrown from the car and suffered head and neck injuries. There, the second district found that expert testimony was not needed because “ ‘it was [not] beyond the province of the jury that “the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiffs damages.” ’ ” Zurline, 642 So.2d at 1170 (quoting Burns, 476 So.2d at 279).
However, in State Farm, the fifth district found that the dynamics of seatbelts were not within the common understanding of the jury. 565 So.2d at 752-53. There, plaintiff was thrown around the inside of the car and sustained lower back injuries; these injuries did not “obviously” result from hitting the windshield, door, or dashboard. Zurline, 642 So.2d at 1170 (citing Smith, 565 So.2d at 754).
In Zurline, we discussed seatbelt fact patterns that might require expert testimony to establish the causal connection between the lack of a seatbelt and the injuries sustained:
The facts are perhaps more compelling in this case where the appellant was injured from a side collision rather than a frontal collision. The dynamics of seatbelt protection from injuries from side impacts may be even less a matter of common understanding than from frontal collisions. In fact, if the automobile in which [plaintiff] was driving did not have side impact protection, wearing a seatbelt may have actually increased [plaintiffs] chances of suffering fatal injuries in the crash. Thus, the “common understanding of the jury” cannot be substituted for proof where there is no evidence of the causal connection between the injuries suffered and the non-use of the seatbelt under the circumstances of this case. This is particularly apparent where the only injury identified by the trial court as occurring in a Bums-like situation was the post concussion headaches, which were not even rated as part of [plaintiffs] permanent injuries by her doctors.
Id. at 1171. We reversed the judgment due to the defendant’s failure to present “competent evidence that [plaintiffs] fail *967 ure to wear the seatbelt caused or substantially contributed to her injuries and for that reason the seatbelt defense should not have been submitted to the jury.” Id. at 1170.
In DO & CO Miami Catering, Inc. v. Chapman, 899 So.2d 1236, 1237 (Fla. 3d DCA 2005), the fifth district affirmed the trial court’s decision granting plaintiffs motion for a directed verdict, where plaintiff asserted that the defendant did not introduce any evidence that tied plaintiffs injury to his failure to wear a seatbelt. The court found that DO & CO presented no evidence to meet its burden regarding the seatbelt defense. Id. at 1238.
Here, the trial court’s denial of plaintiffs motion for a directed verdict as to the seatbelt defense must be reversed because the defendant failed to present competent evidence establishing that plaintiffs failure to wear her seatbelt caused her injuries. This was a complex crash wherein plaintiff was partially ejected and injured while still in the vehicle. As in Zurline, the “common understanding of the jury” could not be substituted for proof where there was “no evidence of the causal connection between the injuries suffered and the nonuse of the seatbelt under the circumstances of this case.” 642 So.2d at 1171. The evidence presented by the defendant was uncertain, speculative, and conjectural. Further, as plaintiff argued, the defendant was unable to establish prima facie evidence on her two-prong burden regarding the seat-belt defense — that plaintiff was not wearing a seatbelt and that the failure to wear the seatbelt caused or contributed to her injuries — without impermissibly stacking inferences. See Stanley v. Marceaux, 991 So.2d 938, 940 (Fla. 4th DCA 2008) (reversing judgment on jury verdict based on an impermissible stacking of inferences).
Accordingly, we reverse the comparative fault finding and remand for entry of a directed verdict for plaintiff on that issue and final judgment for the full amount of the jury verdict.
As to defendant Hoelke’s cross-appeal of the trial court’s refusal to grant her a setoff for a hospital bill, we affirm because the record is not sufficient to establish that plaintiff had no remaining obligation to pay the hospital bill she incurred.

Affirmed in part, Reversed in part and Remanded.

WARNER and LEVINE, JJ., concur.